The next case this morning is MoMo Enterprises v. Popular Bank. Mr. Scheer. Please, the court. As this court is well aware, we are alleging a wide conspiracy to deprive my client of certain things. Basically we are saying that a wide range of individuals conspired to purposely ruin his business so he couldn't make his mortgage payments on his restaurant unit and also on his residence that subsequently during the mortgage foreclosure proceedings, the bank, BPNA, did certain things, used the wrong PIN number, wrong legal description, no unit number during all the proceedings before the state mortgage foreclosure court, then subsequently during the judicial sale, used the same wrong information intentionally to suppress competitive bidding and then as soon as the BPNA purchased the property, the restaurant unit, they then turned around and sold it to a co-conspirator for approximately the same amount of money. Subsequent to that, after 30 days after the mortgage foreclosure was confirmed, there was another concerted effort not only to conceal what they had done but more importantly to prevent my client from being able to file a quorum nobis or section 2-1401 to overturn that and then subsequently the piece de resistance was we found out that approximately 10 months before we filed before the district court that certain of the co-conspirators had converted his rooftop unit by unlawfully changing the condominium documents. There are certain statements which we believe are false and intentionally made which I think are important because they go directly to undercut our assertion that the mortgage foreclosure was obtained by fraud on the court, on the state court. Also, they tend to attack our position that we had no chance to have the 2-1401 petition determined before the state court and it also Now, isn't fraud on the court something that is so extreme that it prevents a court from being starting out whether one party's story seems more plausible than another? That doesn't disable the machinery of the court, does it? No, Judge, but under Illinois law, under the Bank of America v. Adyega decision, the fabrication of evidence to support your case constitutes fraud on the court and that renders all the judgments or judgment orders void. So there was definitely evidence manufactured here. Tell me this, if Mr. Gonzales were forced to pick one claim against one defendant in this federal court litigation and that was it, in other words, argue one claim only, what would he pick as his strongest claim against his most culpable defendant? Well, I think the most culpable defendant is BP&A, the bank, and I would say that it's either the Sherman Antitrust claim or, if this court considers what we alleged in the Second Amendment complaint and proposed Third Amendment complaint, I think it's a RICO violation. This is the collection, subsequent to the mortgage foreclosure being confirmed, they subsequently attempted to collect the full amount of the monies owed, which was $680,000, even though they had been paid, theoretically it was a credit bid, $441,000 for the property. Under the Illinois full-bid debt rule, they were entitled to no deficiency. They, in fact, got a deficiency of $246,000, but they pursued the $680,000 supposed deficiency for 44 months. And that's the, as far as I'm concerned, that's the attempt to collect an unlawful debt. One of the things I'm wondering about this appeal is what effect, if any, the district court decisions had, because it's not clear to me whether you dropped any claims in light of them. For example, do you still assert that there is diversity jurisdiction? No, no, no, we don't. That was a mistake. What about the district court having personal jurisdiction over Banco Popular? Well, I think that that's still an issue because the district judge set forth our new allegation, stated that neither side had made an argument as to whether or not that was sufficient for in personam jurisdiction, and then she decided not to decide it because she was going to dismiss the entire Second Amendment complaint with prejudice. So are all of the claims other than diversity jurisdiction and all of the dependents still in? The one claim, I think it was claim 30, we did not reassert in the Third Amendment complaint. Everybody, all the dependents are... Was the Third Amendment complaint allowed? No, it was not. Well, that really is not before us, I guess. Well, the fact that it wasn't is what you're arguing? Right. I'm sorry, is there a question? Judge? So, in other words, all the other claims aren't, and all the other dependents are still in? Yes, I believe so. I'd just like to go through some of these false statements. I think they're important because, in part, the district judge relied on some of them. First of all, they claim that the 044 pin number was a mistake. For Illinois law, foreclosure law, you know, you don't have to have any pin number, right? Well, you have to be able to identify the property. But Illinois foreclosure law doesn't require a pin number in the first case. I know. It's my understanding. But they use this to, subsequently, to deceive people that would have been potential bidders on the property. They were the only, as far as I know, they were the only, the BPNA was the only one there who bid. The pin number was wrong. The pin number basically didn't... Could it have been a mistake, the change in the pin number? No, it couldn't have been, Judge, because when they filed the mortgage foreclosure suit on the same date, they filed a Liz Pendens under the correct 071 number, not the 044 number. Prior to that, William Bolson, who was the Vice President of Commercial Lending for BPNA, sent a letter stating that he knew that the pin number now was 071 and that the legal description was incorrect. BPNA also, and CHUHAC, also got a title report from AQUEST Title, which also indicated that the correct pin number was 071. And finally, when they recorded the judicial sale deed was, of course, executed under the incorrect 044 number. When they received that on December 10th, 2010, in the next five days, they forged that to change the 044 to 071 and recorded that with the recorder of deeds. And, of course, that was the special warranty deed was under 071 given to Leiden, who was the purchaser. So this was not a mistake at all. There's some other statements I wanna put up. As to our 214.01 petition, first of all, they contended we did not raise the question of fraud on the state court, which is not true. Then they maintained that we raised it in the 214.01, and the 214.01 was adjudicated on the merits, and therefore, Brooker Feldman and Brezhd Yudhikata apply. Then they maintained that the 214.01 was withdrawn pursuant to a June 21st, 2013, order. That is also not correct. The order specifically says that Gonzales' motions to amend the 214.01 in motion for a leave to file an amicus curiae brief were withdrawn. A 214.01 under Illinois law petition is a pleading. It is not a motion. A motion is just a request to have the court do something for you. The petition would have had it been refiled and also served again on all the defendants, either by certified mail or by the sheriff. So, and this is a particularly egregious misrepresentation because the district court judge picked this up, and if you take a look at the September 30th, 2017 judgment order, the one that assessed sanctions against me, I think it's page four, she basically says it appears that the 214.01 was withdrawn. It's never been withdrawn. It's still pending. They next falsely state about deficiencies. In the motion to dismiss the second amended complaint, they said no deficiency was pursued because of the Illinois full bid debt credit rule, which basically says if the lender goes in and purchases the property at the judicial sale, whatever's bid is deemed to be the fair market value of the property, and the lender is not entitled to any deficiency at that time. Then they changed their position. They saw that they had gotten a deficiency judgment for $246,000. But at the same time, they're pursuing a citation to discover assets for the full amount, $680,000. It's all verified under oath. And this citation to discover assets was pursued for 44 months from, I believe, June 22nd, 2012, up to and until February 25th, 2015. They also falsely maintain they didn't know of the lien or lis pendants on the title prior to the sale to Leiden. In order to facilitate that falsehood, they say that the closing for Leiden took place on October 20th, 2011. But the billing records that Chuhack and Texan filed under oath indicate that the closing took place on October 25th, 2011, so therefore they knew or should have known about the lien and lis pendants. They also claim that they didn't know anything about the lease between Momo Enterprises and Plaza Lounge. Momo owned the restaurant unit, and Plaza Lounge was the one that ran the restaurant. We have an affidavit in 2009 from Thomas Horne, who was the vice president of BPNA, and he states that he's aware of the lease between Momo and Plaza Lounge. And also, the biggest thing is that they served my client with a five-day notice, and he cured the back payment of rent and then continued to pay them, and they went ahead and filed a supplemental petition and had him evicted anyways. They filed a response to my client's complaint with the OCC, and it basically reasserted all these false allegations. Then they said the judge should take that into consideration and should dismiss the Second Amendment complaint with prejudice. Thank you, Counselor Johnson. Okay, thank you. Ms. Matrick? May it please the Court? Kristen Hudson on behalf of Two Hecantechs, N.P.C., Popular Bank, formerly known as Banco Popular North America, Popular Inc., Thomas Horne, Cara Allen, Daniel Fungali, Joshua Hyman, and Terrence Tu. I'll be presenting oral argument on behalf of all the appellees today. What you just heard has nothing to do with what the district court ordered here. You didn't hear any error in the district court's decision. We ask that this court affirm the district court's decision on two bases. First, any further amendment of these claims would be futile and in bad faith and with dilatory motive. And secondly, this court has the power to summarily affirm the district court's dismissal with prejudice as a sanction for appellant's conduct in this court. This isn't a complex case. This doesn't involve a constitutional issue. It doesn't involve unsettled law. In fact, the law has been decided for decades. The legal principles in this case form the bedrock of the federal legal justice system. What makes this case complicated is the fact that in the second amended complaint, appellants named 24 distinct disparate parties alleged 34 counts with 179 pages. These parties included a bank, a holding company, two title companies that had no relationship whatsoever to the plaintiffs, condo association, law firms, and individual lawyers. The district court correctly dismissed the second amended complaint without prejudice and required the plaintiffs to file a motion for leave to file an amended complaint attaching the proposed pleading before she'd allow a further amendment. You know, the facts, as alleged by Mr. Gonzales, describe some all-out neighbor-to-neighbor warfare at 1700 West Division Street in Chicago. Suppose Gonzales' neighbors did engage in conduct to ruin his business. Maybe they wrote scathing Yelp reviews, made false reports to the health department. I don't know. And the results were that Gonzales' business declined and the bank eventually foreclosed on his property. What do you think would have been the proper way for him to seek redress? Now, look, I realize I'm asking, you know, counsel for the defendant to lay out the plaintiff's best tragedy, strategy. But indulge me for a moment. What do you do? Well, Your Honor, there were ample opportunities for plaintiffs, appellants to raise these issues in the state court proceedings that have been proceeding since 2010. And before that, there were multiple opportunities post-judgment in the state court. There were multiple opportunities for the plaintiffs and the appellants to appeal those decisions to the appropriate state court. And in fact, plaintiffs and appellants did raise these issues multiple times in front of the state court. And those were rejected. That is one of the bases we're asking for this court to affirm because they're barred here by claim and issue preclusion. But to your point, Your Honor, that you raised before, what is the best claim that the plaintiffs and appellants could proceed on here? And the claim that was identified was a RICO claim. Nowhere in the 34 counts of the second amended complaint is there a RICO violation alleged. And nowhere in the 33 counts of the proposed third amended complaint is there a RICO violation. And in this court, there is a one-line argument about RICO that has no connection to the district court proceedings or, in fact, any reality in this case. And that's emblematic, really. That representation, to Your Honor, is emblematic of how this case has proceeded in the state court and in the district court. And that is exactly why we're seeking sanctions here. If we did allow ourselves to get into the factual assertions here, one thing that is a little troubling is the fact that the property was sold at a judicial sale without the commercial parking as part of the description, and then it was added back in later. That does seem a bit suspect because parking in that neighborhood, my goodness, would certainly increase the value of a commercial property. I know this is digging into the state court claim, but could that be evidence of fraud that perhaps this court should consider? Absolutely not, Your Honor. In the state court foreclosure proceeding, the mortgage, and in fact, which was inserted into the complaint for mortgage foreclosure, included a description of the commercial property. And to be fair, I'm not really quite sure what the commercial parking argument really is. There's no dispute here about the property that's at issue. It sits at the corner of Paulina and Division. We had a mortgage. The bank had a mortgage on the property. That included commercial parking. We foreclosed on that. The property at issue is a condo. In fact, I have here with me the condo declaration that is recorded at the recorder of deeds. It's the same PIN number that was used throughout the state court mortgage foreclosure proceedings. But setting that aside, Your Honor, it's legally irrelevant, frankly. The issue, it would be fraud if we foreclosed on the wrong property. No one's suggesting that. And the bank was allowed to bid at the judicial sale. It was not required to bid the entire amount of the indebtedness. In fact, it did not. It bid $441,000 approximately and sought a deficiency judgment for the difference between what was owed on the note and what the judicial sale went for. Now, again, that's of record. We have a judgment for $246,000. There's no evidence whatsoever, notwithstanding appellant's representations, that the bank was seeking to get double recovery here. The entire amount of the note plus what it bid for the property and the foreclosure. In fact, the bank would not have been allowed to proceed in that fashion. That would have been inappropriate. We will submit that to the court. But the question really remains is whether the district court was correct in dismissing all of the 34 and 33 counts here with prejudice. And, yes, the district court was correct. And this court really need look no further than the federal claims that arise under federal question jurisdiction. Some of those the district court addressed on the merits. And, for example, the Fair Debt Collection Practices Act claim. The district court held correctly that that claim was barred by the statute of limitations. One-year statute of limitations for FDCPA claims. Those accrued in 2010 and 2011 in the state court. And suit was filed here in December of 2015. The violation of the Fair Housing Act was similarly time-barred. That has a two-year statute of limitations. Those accrued in 2011 and were barred by the time that Plaintiff's appellants filed suit in 2015. The violation of Section 1985-3 was also time-barred. Again, accrued in 2010, 2011. A two-year statute of limitations that had long since been barred by the time that the appellants filed suit in December of 2015. There are a series of claims relating to violation of due process. Those are futile. They could never state a claim because here we have purely private actors all not acting under the color of state law. So can never state a claim for violation of due process against these private citizens. The other claim that the appellants identified in response to Judge Roebner's question was the Sherman Act claim. And the district court dismissed the Sherman Act claim on Rooker-Feldman grounds. However, that claim was equally amenable to dismissal on the merits because it was barred by a four-year statute of limitations that accrued again in 2010 or at the latest in 2011. And suit was filed in December of 2015. And setting aside the statute of limitations issues, there are no set of circumstances under which the plaintiffs and appellants could ever state a Sherman Act claim. They have identified no conspiracy, or I should say no plausible conspiracy, between these disparate sets of actors, no identification of the relevant market. And even assuming that those could be identified here, there's no antitrust injury. There must be some injury to consumers as a result of the antitrust violation. And what we have is a disgruntled mortgagee who did not pay his mortgage. That's undisputed. You did not hear the appellant's plaintiff's counsel get up and tell you that he paid his mortgage. He said he paid rent, but the bank was entitled to an order of possession under Illinois law, notwithstanding the fact that he may have paid rent. And the amount of that rent is disputable. The lease was a sham lease between the plaintiff's appellants and the plaintiff's appellants. Momo Enterprises was the leaseor. The lease date was in 2009. Momo was dissolved in 2008. Momo is an entity that's wholly owned by Plaintiff Anastasio Gonzalez. Renting to Plaza Lounge, an entity also wholly owned by Plaintiff Anastasio Gonzalez. And this is the troublesome nature of this case because there are so many layers of the onion in the story that plaintiff's appellants have decided to tell. And the district court was required to accept those facts as true in deciding the motions to dismiss. And defendants were required to accept them as true as well. But there are simply statements that are made in front of this court that represent the record in the state court. And that is what this case is about. What happened in the state court? Did plaintiff's appellants have an opportunity to present those arguments indisputably? Yes they did, and in fact they did. The district court still had enough in front of it to decide that in addition to the federal question claims which were futile and could never state a claim, the state law claims were also futile and could never state a colorable claim. That's an alternate ground for this court to affirm the district court's dismissal of those state law claims with prejudice. In addition, as I mentioned, this court has the power to summarily affirm the district court's dismissal with prejudice for violation of multiple rules in this court. As early as this morning, plaintiff's appellants noticed a Rule 60B motion to vacate in front of the district court. That motion, like the briefs in this court, rehashed positions that the district court has in fact rejected multiple times. That was summarily rejected this morning by the district court. But in addition to rehashing obvious and unsupported positions and continue to raise issues outside the jurisdiction of this court, appellants have proceeded, notwithstanding all of the judicial resources that have already been expended, and all of these defendants, appellees, and nine sets of lawyers that have spent three years litigating this case. For that reason alone, we ask that the court affirm the district court's dismissal with prejudice. Thank you. Thank you. Your time has expired, but I'll give you one minute. Judge, again, the appellee's counsel says that we had multiple opportunities to raise our objections, our fraud on the court objections. We never had any opportunity. Every time we went before the assigned mortgage foreclosure judge, they made a motion to move it to a judge who doesn't even sit in the daily center. They also filed multiple motions for sanctions against my client, motions to compel. They wanted to have him prosecuted by the state's attorney's office for false statements when he basically stated the truth as to the incorrectness of the PIN number. Again, counsel is saying this is just too many people, too big of a conspiracy to exist in reality. All you have, the lynch pin here, are the billing records by the Chuhack and also the affidavit by Ray Irizarry, which sets out the conspiracy very specifically. Thank you, Your Honor. Thank you. The case will be taken under advisement.